IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DONALD MORGAN,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL ROBINSON, Washington County Sheriff, an individual; and WASHINGTON COUNTY, NEBRASKA,<br><br>                Defendants. | **8:14CV212**<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the Court on plaintiff's motion for a temporary restraining order or a preliminary injunction, Filing No. 12. Defendants filed a motion to stay or dismiss, contending this case should be submitted to federal mediation. Filing No. 15. Defendants also filed a motion to compel arbitration.[1] Filing No. 23. The plaintiff filed a Complaint under 42 U.S.C. § 1983 against defendants Michael Robinson, Washington County Sheriff, and Washington County, Nebraska. Filing No. 1. Plaintiff contends the defendants violated his First and Fourteenth Amendment rights to the United States Constitution. The Court conducted a hearing on these motions and received evidence from the plaintiff and the defendants. See Filing Nos. 34 and 35.

**BACKGROUND**

      The Complaint states that the defendants employed the plaintiff as a deputy for the Washington County Sheriff's Office for 13 years, and that defendant Michael Robinson served as the Washington County Sheriff. Filing No. 1, at ¶¶ 4, 5. The

---

[1] Defendants advise the Court the parties have in fact submitted the dispute to federal mediation for designation of potential arbitrators, although it appears plaintiff has done so under protest. Filing No. 23.

Complaint alleges that defendants terminated the plaintiff in retaliation for engaging in protected speech *Id.* at ¶¶ 11-13, that defendant Robinson made stigmatizing remarks against the plaintiff, and that the defendants have failed to follow proper arbitration procedures and have denied the plaintiff an opportunity to clear his name before an impartial tribunal. *Id.* at ¶¶ 15-16.  The speech involved Donald Morgan's campaign against defendant Michael Robinson who both ran for election for the position of Washington County Sheriff.  Robinson won the primary election on May 13, 2014, and on May 18, 2014, defendants terminated Morgan from the Washington County Sheriff's Department.  Morgan claims defendants fired him, because of statements he made during the election.

The plaintiff is a participant in the Local Collective Bargaining Agreement (Agreement).  Filing No. 14, Ex. A, at Page ID No. 37.  There is a binding arbitration clause in the Agreement.  However, plaintiff contends it should not be enforced at this time because (1) the Agreement does not contain the required statutory language near the signature block noting that arbitration is required (Neb. Rev. Stat. § 25-2602.02);[2] and (2) the Sheriff is both a supervisor as well as a member of the Local Union, creating a conflict of interest for any arbitration.  Plaintiff asks the Court to grant the injunction staying enforcement of the arbitration clause.  Plaintiff argues defendants violated his right to due process, as the disciplinary action report made stigmatizing remarks so as to defame his character. He further contends that he made a written demand for arbitration which in accordance with Article 5, Section 7 of the 2012-2016 Labor

---

[2] This section has been preempted by Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc., 757 N.W.2d 205, 211 (Neb. 2008), wherein the Nebraska Supreme Court determined that the Federal Arbitration Act governs the contract, and not the notice requirement of § 25-2602.02.

Contract required arbitration within 10 days to the County and that never occurred. Thus, argues plaintiff, defendants breached the contract. Defendants, the sheriff supervisor and the county, ask the Court to stay this case and order arbitration.

**LAW**

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute to which he has not agreed to submit. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (*quoting Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960). However, once parties have agreed to a contract containing an arbitration clause, courts have "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Id.* (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).

"The Federal Arbitration Act, 9 U.S.C. § 4, states that a party aggrieved by the failure of another to arbitrate under a written agreement may petition the district court for an order compelling arbitration." *Art Etc. LLC v. Angel Gifts, Inc.,* 686 F.3d 654, 656 (8th Cir. 2012). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). If a valid arbitration agreement exists and the dispute falls within the scope of that agreement, a dispute must be submitted to arbitration. *See Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 946 (8th Cir. 2001).

The issue of whether the parties have a valid arbitration agreement at all is a "gateway matter" that requires judicial resolution. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); see *Howsam v. Dean Witter Reynolds, Inc.,* 537

3

U.S. 79, 83 (2002) ("[W]hether the parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination.") (internal citation omitted); *see also Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791 (8th Cir. 1998) (stating a court must decide whether [an] agreement to arbitrate is valid). The Supreme Court noted the arbitrability determination depends on whether the parties "agree[d] to submit the arbitrability question itself to arbitration." *Kaplan*, 514 U.S. at 943. "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 944 (alterations in original) (citing *AT & T Techs., Inc. v. Comm's Workers of Am.,* 475 U.S. 643, 649 (1986)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.,* 475 U.S. at 649.

"The Federal Arbitration Act create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.,* 581 F.3d 726, 731 (8th Cir. 2009) (internal citation omitted). However "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (citing *Kaplan,* 514 U.S. at 944). "Thus, state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of

arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co.,* 581 F.3d at 731.

"To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Gerhold Concrete Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 695 N.W.2d 665, 672 (Neb. 2005); "A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract." *Peters v. Halligan,* 152 N.W.2d 103, 106 (Neb. 1967).

If an agreement to arbitrate is present, courts, not arbitrators, determine the question of arbitrability, unless the parties unambiguously provide otherwise in their contract. *Howsam,* 537 U.S. at 83; *International Bhd. of Elec. Workers v. GKN Aerospace N. Am., Inc.,* 431 F.3d 624, 627 (8th Cir. 2005); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 547 (1964) ("[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty"); *AT & T Techs., Inc. v. Comm's Workers,* 475 U.S. 643, 649 (1986).

The court applies the principles derived from a series of cases known as the *Steelworkers Trilogy* to determine whether a dispute is arbitrable. *See United Steelworkers v. Am. Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960).

Under the *Steelworkers Trilogy,* (1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.  *GKN Aerospace,* 431 F.3d at 627*; Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc.,* 186 F.3d 878, 881 (8th Cir. 1999).

Thus, when deciding whether to compel arbitration, this court applies a two-part test.  See *United Steelworkers v. Duluth Clinic, Ltd.,* 413 F.3d 786, 788 (8th Cir. 2005). First, the court must determine whether a valid agreement to arbitrate exists.  *Id.* Assuming such an agreement exists, "[t]he only question is whether it covers this dispute." *Id.*

**DISCUSSION**

*a.  Arbitration Clause*

Plaintiff first contends that the clause in this Agreement is not enforceable, as the defendants failed to follow the procedural requirements set forth in the Agreement.  The arbitration clause states that the arbitrator "shall conduct the arbitration proceeding within (10) calendar days after the submission of the written demand for arbitration." Plaintiff filed his request on June 26, 2014, and the time to respond expired on July 6, 2014, contends plaintiff.  Second, plaintiff argues that Sheriff Robinson is a supervisor in accordance with Neb. Rev. Stat. § 48-801(14), as well as a member of the FOP Lodge

6

36. Plaintiff states the sheriff is not listed as part of the bargaining unit of FOP Lodge 36, but that he does in fact participate and interfere with said unit. Under Nebraska law, supervisors are not "included in a single bargaining unit with any other public employee who is not a supervisor." Neb. Rev. Stat. § 48-816(3)(a).[3] Third, plaintiff contends that the arbitration agreement does not contain the required language "THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Neb. Rev. Stat. § 25-2602.02 near the signature block. Defendants contend that plaintiff's claims are subject to the grievance procedure and must be submitted to arbitration.

The Federal Arbitration Act, 9 U.S.C. §§1-16 (1994), applies to arbitration agreements involving employment-related claims. The Eighth Circuit has stated:

> Congress enacted the Federal Arbitration Act (FAA), "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA declares that written agreements to resolve disputes through arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994). The effect of the FAA was to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), the Supreme Court held that the FAA's provisions apply to arbitration agreements covering employment-related claims. *Id.* at 1311, 121 S.Ct. 1302 (holding that in the employment context "only contracts of employment of transportation workers" are exempted from the FAA's coverage). The FAA therefore governs Gannon's arbitration agreement with Circuit City and we undertake our review keeping in mind that the FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24, 103 S.Ct. 927.

---

[3] Because the Court concludes that this case shall be arbitrated, it need not address this issue.

7

*Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 679-80 (2001).

The Agreement provides that the FOP is the bargaining representative for its employees, and in particular the plaintiff in this case. *See* Filing No. 14. The arbitration agreement permits the aggrieved party to submit the grievance regarding his claims. *Id.* at Article 5. If plaintiff did not believe the internal grievance process resulted in settling his claim, he can also submit it to arbitration. *Id.* Art. 5, Section 7. The arbitration is final and binding. The Agreement also sets forth a procedure for selecting an arbitrator.

It appears that plaintiff sent an arbitration request on June 26, 2014, and on July 23, 2014, counsel for the defendants sent a response listing four proposed individuals to serve as arbitrator. On July 25, 2014, plaintiff filed this complaint. On August 22, 2014, plaintiff agreed to arbitrate under protest, disagreed with all four suggested arbitrators, and requested that the arbitrators be chosen from the federal mediation list as provided in the Agreement.

In addressing a motion to compel arbitration then, courts generally "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.* 367 F.3d 1048, 1052 (8th Cir. 2004). In this case, plaintiff claims he was terminated for exercising his free speech. Discharge of an employee is a matter subject to grievance under the Agreement. Filing No. 14, § 7, at 9. The Court finds this is a valid agreement, and the dispute clearly falls under the confines of the agreement. Thus, the Court is required under *Gannon* to enforce the arbitration clause. *Gannon*, 262 F.3d at 680.

With regard to the 10 day requirement, the evidence shows that the parties did work towards an arbitration agreement, sometime between 10 and 30 days of the request. The Court notes that the precise timing of 10 days was arguably not met in this case. However, a party has not waived his right to arbitration unless he:

> "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.,* 989 F.2d 966, 969 (8th Cir.1993); *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 793 (8th Cir.1998).
>
> The actions must result in prejudice to the other party for waiver to have occurred. *Stifel, Nicolaus & Co. v. Freeman,* 924 F.2d 157, 158–59 (8th Cir.1991) (holding there was no prejudice and therefore no waiver, even though the moving party acted inconsistently by initiating the suit). Prejudice results when, inter alia, parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts. *Stifel,* 924 F.2d at 159.

*Kelly v. Golden,* 352 F.3d 344, 349 (2003). The Court agrees with the defendants that there is no waiver of the right to arbitrate by the defendants, and that in any event, no prejudice has resulted by the filing of this suit. The parties have not yet litigated this case nor conducted any discovery. The delay in this case was minimal and defendants clearly tried to arbitrate this case.

Lastly, with respect to plaintiff's argument that the labor contract is void because it violates § 25-2602.02 for failing to have the capitalized notice language near the signature line, the court rejects this argument. See *Affiliated Foods Midwest Coop., Inc. v. Integrated Distribution Solutions, LLC,* 460 F.Supp.2d 1068, 1071-72 (D.Neb. 2006) (Court rejected argument that opposing party had waived the right to arbitrate the dispute citing *Kelly v. Golden*, supra, and found preemption applied); *see* also, footnote

2, supra. As the Court stated, "[b]ased on the reasoning of *Casarotto*, the Court finds that Neb. Rev. Stat. § 25-2602.02 does not void the agreement's arbitration provision, and that the agreement is valid." *Id.* at 1073, citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 683, (1996).

<u>b. Motions to Strike</u>

The Court notes that the defendants filed a motion to strike, Filing No. 19. Defendants contend that paragraphs 5, 6, and 7, contain allegations that are conclusions of law and not based on facts. In view of the fact that the Court finds this case is going to be arbitrated, the Court finds that the motion is moot.

Likewise, the defendants also filed a motion to strike, Filing No. 30, plaintiff's supplemental index of evidence, Filing No. 29. However, the magistrate judge allowed plaintiff to file his affidavit, Filing Nos. 32 and 33. Consequently, this motion is also moot.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff's motion for a temporary restraining order or a permanent injunction, Filing No. 12, is denied;

2. Defendant's motion to stay or dismiss, Filing No. 15, is granted as to the stay and denied as to the motion to dismiss;

3. Defendant's motion to strike, Filing No. 19, is denied as moot;

4. Defendant's motion to compel arbitration, Filing No. 23, is granted;

5. Defendant's motion to strike, Filing No. 30, is denied as moot; and

6. The parties are ordered to file a status report every 60 days from the date of this order updating the Court on the arbitration proceedings. The parties are further

ordered to immediately notify this Court when the arbitration process is complete and indicate what further action, if any, needs to be taken in this case.

7. This case is stayed until further notice by this Court.

Dated this 20th day of November, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge